IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | |
|---|---|
| UNION PACIFIC RAILROAD COMPANY,<br><br>            Plaintiff,<br><br>    v.<br><br>CITY OF ALPINE, TEXAS and ROD PONTON, in his official capacity as the City Attorney for the City of Alpine, Texas,<br><br>            Defendants. | Case No. 4:20-cv-72___ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Union Pacific Railroad Company brings this complaint against the City of Alpine, Texas and Rod Ponton, in his official capacity as City Attorney for the City of Alpine.

**INTRODUCTION**

1.  Union Pacific seeks declaratory and injunctive relief holding that City of Alpine Ordinance 2020-02-01 is preempted by federal law, unconstitutional, and therefore unenforceable. Ordinance 2020-02-01 prohibits any westbound train from blocking 5th Street in Alpine for longer than ten minutes. A violation of the ordinance is punishable by a fine of $1,000, with an additional $100 fine for each additional minute beyond the initial ten minutes. The Fifth Circuit has held that such "anti-blocking" laws are preempted by federal law—namely the ICC Termination Act (ICCTA), which gives the federal government exclusive jurisdiction to regulate rail transportation. *See Elam v. Kansas City S. Ry. Co.*, 635 F.3d 796, 807 (5th Cir. 2011) (holding that Mississippi's anti-blocking statute was preempted); *Friberg v. Kansas City S. Ry. Co.*, 267 F.3d 439, 444 (5th Cir. 2001) (same, for Texas's statute). As the court explained, laws that

dictate how long trains can block crossings directly and indirectly regulate railroad operations, including train length, train speed, and brake testing. And Congress, to ensure uniform regulation of this quintessentially interstate industry, protected these matters from state or local regulation.

2. Courts across the country agree, holding that state and local anti-blocking laws are preempted by the ICCTA, the Federal Railroad Safety Act (FRSA), or both. Because Ordinance 2020-02-01 is materially indistinguishable from these other state and local anti-blocking laws, it is also preempted and unenforceable. And for much the same reasons, the ordinance interferes with railroads' interstate operations in violation of the Constitution's Commerce Clause.

3. The City of Alpine, through the City Attorney, has enforced this ordinance against Union Pacific by imposing thousands of dollars in fines, which Union Pacific has paid. There is thus a live controversy between the parties over the ordinance's enforceability. Union Pacific therefore seeks a declaration that Ordinance 2020-02-01 is preempted and unenforceable, plus a permanent injunction prohibiting the City of Alpine and the City Attorney from enforcing Ordinance 2020-02-01 against Union Pacific and its employees.

## PARTIES

4. Plaintiff Union Pacific is a Delaware corporation with its principal place of business in Omaha, Nebraska. It is a common carrier railroad engaged in interstate and intrastate commerce in many States, including Texas, as well as international commerce with Mexico. Union Pacific operates the largest railroad network in the United States, connecting 23 states in the western two-thirds of the Nation by rail. In 2020, Union Pacific operates an average of 4,260 locomotives over 32,340 miles of track, including approximately 30,000 railroad crossings.

5. Defendant City of Alpine is a municipality operating under a home-rule charter. The City of Alpine may be served at City Hall, 100 North 13th Street, Alpine, Texas 79830. On February 18, 2020, the City of Alpine's City Council adopted Ordinance 2020-02-01.

6. Defendant Rod Ponton is the City Attorney for the City of Alpine. He is named in his official capacity and may be served at the offices of Big Bend Law, 123 N. 6th Street, Alpine, Texas 79830. The City Attorney has prosecuted, and, on information and belief, will continue to prosecute, citations under Ordinance 2020-02-01 against Union Pacific and its employees.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over Union Pacific's claims under 28 U.S.C. §§ 1331, 1983, and 2201 and *Ex Parte Young*, 209 U.S. 123 (1908), because Union Pacific seeks prospective relief against the enforcement of a local law that violates the Constitution and laws of the United States. "It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 (1983). Further, "there is an implied right of action to enjoin state or local regulation that is preempted by a federal statutory or constitutional provision." *Planned Parenthood of Houston & Se. Tex. v. Sanchez*, 403 F.3d 324, 334 (5th Cir. 2005) (citation omitted); *see also New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 329–30 (5th Cir. 2008) (recognizing "an affirmative federal cause of action . . . against state officials who interfere with federal rights, including where the state official seeks to enforce federally preempted state regulations").

8. The Court may declare the parties' legal rights and obligations under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, because the action presents an actual controversy within the Court's jurisdiction.

9. This Court has personal jurisdiction over the City of Alpine as a municipal subdivision of the State of Texas. This Court has personal jurisdiction over the City Attorney, in his official capacity, because he is a resident of the State of Texas and an official of the City of Alpine.

10. Venue is proper under 28 U.S.C. § 1391(b)(1) because the City of Alpine is a subdivision of the State of Texas located in, and with its principal place of business in, the Western District of Texas. Venue is proper under § 1391(b)(1) because Rod Ponton maintains an office in the Western District of Texas in his official capacity as the City Attorney. Venue is also proper under § 1391(b)(2) because a substantial part of the activity to which Ordinance 2020-02-01 applies occurs in this judicial district, specifically in the City of Alpine.

## BACKGROUND AND FACTUAL ALLEGATIONS

### *State and Local Regulation of Railroads and the Commerce Clause*

11. Rail transportation is an inherently interstate activity. Thus, "the regulation of railroad operations has long been a traditionally federal endeavor, to better establish uniformity in such operations and expediency in commerce." *Friberg*, 267 F.3d at 443. Indeed, railroads are subject to one of "the most pervasive and comprehensive of federal regulatory schemes." *Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 318 (1981).

12. Even so, states have often tried to regulate certain aspects of railroad transportation. The Supreme Court has "frequently invalidated" such efforts. *Id.* For example, the Court struck down an Arizona law that imposed a maximum train length of fourteen passenger cars or seventy freight cars. This state regulation violated the Commerce Clause. *S. Pac. Co. v. State of Ariz. ex rel. Sullivan*, 325 U.S. 761, 769 (1945). In striking down the Arizona law, the Court observed that national uniformity in such regulation "is practically indispensable to the operation of an efficient and economic railway system." *Id.* at 772. The Court has since emphasized that

4

the Commerce Clause is "a self-executing limitation on the power of the States to enact laws imposing substantial burdens on such commerce." *South-Cent. Timber Dev., Inc. v. Wunnicke*, 467 U.S. 82, 87 (1984); *see Pike v. Bruce Church, Inc*. 397 U.S. 137 (1970).

### *The ICC Termination Act*

13. Congress enacted the ICCTA in 1995 to abolish the Interstate Commerce Commission and empower its successor agency, the Surface Transportation Board (STB), "to regulate . . . rail transportation in the United States." *Elam*, 635 F.3d at 804; 49 U.S.C. § 10501. The ICCTA sought "'to implement a [f]ederal scheme of minimal regulation for this intrinsically interstate form of transportation." *Elam*, 635 F.3d at 804.

14. Consistent with this purpose, Congress gave the STB exclusive jurisdiction over "transportation by rail carriers . . . with respect to rates, classifications, rules . . . , practices, routes, services, and facilities of such carriers" and over "the construction, acquisition, operation, abandonment, or discontinuance of [tracks] or facilities."  49 U.S.C. § 10501(b).  Apart from certain narrow statutory exceptions, ICCTA's remedies are "exclusive and preempt the remedies provided under Federal or State law." *Id.*

15. The ICCTA thus preempts state and local laws that (1) "have the effect of managing or governing rail transportation" or (2) as applied, have "the effect of unreasonably burdening or interfering with rail transportation." *Elam*, 635 F.3d at 805 (citations and emphasis omitted).

### *The Federal Railroad Safety Act*

16. Congress enacted the FRSA in 1970 to "promote safety in every area of railroad operations and reduce railroad-related accidents." 49 U.S.C. § 20101. The FRSA gave the Sec-

retary of Transportation power to "prescribe regulations and issue orders for every area of railroad safety," *id.* § 20103(a), which the Secretary delegated to the Federal Railroad Administration (FRA).

17. The FRSA mandates that "[l]aws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable." *Id.* § 20106(a)(1). To promote that goal, Congress included an express preemption provision. *Id.* § 20106(a)(2). That provision "permits state regulation related to railroad safety only if: (1) the [FRA] has not yet regulated the subject matter of the state regulation," or "(2) the regulation (a) is necessary to eliminate an essentially local hazard, (b) does not conflict with federal law, and (c) does not unreasonably burden interstate commerce." *CSX Transp., Inc. v. City of Plymouth*, 283 F.3d 812, 815 (6th Cir. 2002); 49 U.S.C. § 20106(a)(2).

18. Conditions that exist in communities across the country, and are thus capable of being addressed through uniform national standards, do not qualify as "essentially local" under the FRSA's second savings clause. *Duluth, Winnipeg, & Pac. Ry. Co. v. City of Orr*, 529 F.3d 794, 798 (8th Cir. 2008) (the "conditions allegedly contributing to an essentially local safety hazard" must be "unique to the locale"); *see, e.g.*, *City of Weyauwega v. Wis. Cent. Ltd.*, 384 Wis. 2d 382, 410 (Wis. App. 2018) (rejecting argument that city blocked-crossing ordinance addressed local hazard because blocked crossings exist in "[a]ny community which has railroad tracks"); *Driesen v. Iowa, Chicago Eastern Railroad Corp.*, 777 F. Supp. 2d 1143, 1154 (N.D. Iowa 2011) (same, because "conditions at the crossing in this case were not unique to the locality").

19.     The FRA has enacted comprehensive railroad safety regulations, found at 49 C.F.R. Subtitle B, Chapter II.  These include regulations of train speed and brake testing.  *See City of Plymouth*, 283 F.3d at 816–17.

### *City of Alpine Ordinance 2020-02-01*

20.     On February 18, 2020, the City of Alpine adopted Ordinance 2020-02-01, an ordinance "prohibiting trains from blocking certain intersections."  *See* Exhibit A at 1.

21.     Section I of Ordinance 2020-02-01 states: "That it is unlawful for the operator of any westbound railroad train to operate or to direct the operation of the same in such manner as to prevent the use of 5th Street for purposes of travel for a period of time longer than ten (10) minutes, except that this provision shall not apply to trains or cars in motion other than those involved in switching."  *Id.*

22.     Section II of Ordinance 2020-02-01 states: "A violation of this Ordinance shall be punishable by a fine of $1,000.00, with an additional fine of $100.00 to be levied for each additional minute beyond the initial ten (10) minutes that a westbound train continues to be in violation of Section I."  *Id.*

23.     Trains may block grade crossings for various reasons, including (a) when performing crew changes, (b) when performing switching operations necessary to serve local industries, (c) while seeking entry into a local yard, (d) due to mechanical defects that result in federally mandated stoppages, and (e) when performing federally mandated air brake tests.  Union Pacific makes substantial efforts, consistent with federal regulations and industry safety standards, to avoid or minimize blocked crossings whenever possible.

24.     Union Pacific operates an average of eight trains per day through the City of Alpine and performs multiple crew changes per day.  Union Pacific has committed to expediting these crew changes, when possible, by having outbound crews ready to go when the inbound

train arrives. And before the adoption of Ordinance 2020-02-01, Union Pacific was engaged in productive discussions with the City of Alpine to explore additional solutions to the blocked-crossing issue including identifying a safe, alternative crew change location.

25. To comply with Ordinance 2020-02-01, Union Pacific would need to make one or more changes to its rail operations, including operating shorter, and thus more numerous, trains; adjusting schedules; or "cutting" (*i.e.*, breaking apart) a train to clear the crossing, which would significantly extend the duration of train stoppages and impact the movement of freight across the rail network.

26. For these reasons, courts in 17 states—including the Fifth Circuit in two separate cases—have held that such state or local anti-blocking laws are preempted by the ICCTA, the FRSA, or both. *See Elam*, 635 F.3d at 804 (ICCTA); *Friberg*, 267 F.3d at 444 (ICCTA); *City of Plymouth*, 283 F.3d at 815 (FRSA); *CSX Transp., Inc. v. City of Plymouth*, 86 F.3d 626 (6th Cir. 1996) (FRSA); *Ass'n of Am. R.R. v. Hatfield*, 435 F. Supp. 3d 769 (E.D. Ky. 2020) (FRSA); *BNSF Ry. Co. v. City of Edmond*, No. 19-769, 2019 WL 5608680, at *2 (W.D. Okla. Oct. 30, 2019) (ICCTA and FRSA); *CSX Trans., Inc. v. Williams*, No. 3:16-cv-2242, 2017 WL 1544958 (N.D. Ohio Apr. 28, 2017) (ICCTA); *Driesen v. Iowa, Chicago & E. R.R. Corp.*, 777 F. Supp. 2d 1143 (N.D. Iowa 2011) (FRSA); *Lewis v. Norfolk S. Ry. Co.*, 618 F. Supp. 2d 833 (W.D. Tenn. 2008) (FRSA); *Indiana v. Norfolk S. Ry. Co.*, 107 N.E.3d 468 (Ind. 2018) (ICCTA); *Vill. of Mundelein v. Wisconsin Cent. R.R.*, 882 N.E.2d 544 (Ill. 2008) (FRSA); *Krentz v. Consolidated Rail Corp.*, 910 A.2d 20 (Pa. 2006) (FRSA); *City of Seattle v. Burlington N. R. Co.*, 41 P.3d 1169 (Wash. 2002) (ICCTA and FRSA); *City of Weyauwega v. Wisconsin Cent. Ltd.*, 919 N.W.2d 609 (Wisc. App. 2018) (FRSA); *State v. BNSF Ry. Co.*, 432 P.3d 77 (Kan. App. 2018) (ICCTA); *People v. Burlington N. & Santa Fe R.R.*, 148 Cal. Rptr. 243 (Cal. App. 2012) (ICCTA); *Burlington N. &*

*Santa Fe Ry. Co. v. Dep't of Transp.*, 206 P.3d 261 (Or. App. 2009) (ICCTA); *Canadian Nat. Ry. Co. v. City of Des Plaines*, 2006 WL 345095 (Ill. App. 2006) (ICCTA and FRSA); *State v. Burlington N. & Santa Fe Ry. Co.*, No. TR06-957 (Neb. Cnty. Ct. July 14, 2006) (ICCTA and FRSA). Ordinance 2020-02-01 is materially the same as the laws held preempted in these cases.

27. Further, Ordinance 2020-02-01's burdens on the free and efficient flow of interstate commerce are "clearly excessive in relation to the putative local benefits," in violation of the Commerce Clause. *City of Plymouth*, 283 F.3d at 818 (citation omitted).

### *City of Alpine Citations Issued to Union Pacific*

28. Beginning on April 4, 2020, the City of Alpine Police Department has issued multiple citations to Union Pacific and its employees under Ordinance 2020-02-01.

29. The City Attorney has enforced some of these citations by pursuing fines against Union Pacific and its employees in the City of Alpine Municipal Court. Union Pacific has paid these fines.

30. The City Attorney also threatened to charge Union Pacific employees with "failure to appear for [a] court proceeding" if Union Pacific does not "cooperate in this matter." And he has publicly stated that he "intend[s] to issue [Union Pacific] citations and bring [Union Pacific] to municipal court the same way we do anybody else, . . . [j]ust as we'd have a driver come to court for a speeding ticket." Stephen Paulson, *Alpine greenlights blocked-crossing ordinance*, THE BIG BEND SENTINEL (Mar. 11, 2020), https://bigbendsentinel.com/2020/03/11/alpine-greenlights-blocked-crossing-ordinance/.

31. On information and belief, the City of Alpine and the City Attorney intend to continue issuing citations to Union Pacific under Ordinance 2020-02-01 and enforcing those citations by seeking fines. There is thus a real and substantial dispute over the legality and

enforceability of Ordinance 2020-02-01, which can be definitively resolved through a declaration by this Court determining the parties' legal relations.

32. Union Pacific does not seek to interfere with or overturn any previously issued citations or fines. Union Pacific has paid the fines for each of the known citations issued against it since Ordinance 2020-02-01 was adopted. Rather, this case seeks only prospective relief prohibiting the City of Alpine and the City Attorney from issuing or prosecuting new citations under Ordinance 2020-02-01 against Union Pacific and its employees.

## INJUNCTIVE RELIEF

33. *Ex Parte Young* allows Union Pacific to seek prospective relief in this Court restraining Defendants from enforcing Ordinance 2020-02-01 against Union Pacific and its employees.

34. "If a statute is expressly preempted," that fact "fulfills the remaining requirements" for injunctive relief. *Texas Midstream Gas v. City of Grand Prairie*, 608 F.3d 200, 206 (5th Cir. 2010).

35. Ordinance 2020-02-01 is preempted by federal law and violates the Commerce Clause. It is thus void and unenforceable.

36. Union Pacific and its employees also have suffered and will continue to suffer irreparable injury. They have no adequate remedy at law, such as a right to money damages.

37. The balance of the equities also favors an injunction. When "Congress [has] expressly preempted [an] area of regulation," "there is no injury to the states to weigh against that which they threaten to inflict" on regulated parties. *Trans World Airlines, Inc. v. Mattox*, 897 F.2d 773, 784 (5th Cir. 1990).

38. Union Pacific is therefore entitled to permanent injunctive relief restraining Defendants from issuing and enforcing further citations under Ordinance 2020-02-01 against Union Pacific or its employees.

## COUNT I:
## ORDINANCE 2020-02-01 IS PREEMPTED BY THE ICCTA

39. Union Pacific realleges and incorporates the paragraphs above.

40. Ordinance 2020-02-01 impermissibly seeks to manage or govern rail transportation and imposes an unreasonable burden on rail carriers. It is thus preempted by 49 U.S.C. § 10501(b).

41. The Court should enter a judgment under 28 U.S.C. § 2201 declaring that Ordinance 2020-02-01 is preempted by the ICCTA.

## COUNT II:
## ORDINANCE 2020-02-01 IS PREEMPTED BY THE FRSA

42. Union Pacific realleges and incorporates the paragraphs above.

43. Ordinance 2020-02-01 impermissibly regulates rail safety matters, including train speed, train length, and brake testing, that are covered by federal regulations issued under the FRSA. As a result, Ordinance 2020-02-01 is preempted by 49 U.S.C. § 20106.

44. The Court should enter a judgment under 28 U.S.C. § 2201 declaring that Ordinance 2020-02-01 is preempted by the FRSA.

## COUNT III:
## ORDINANCE 2020-02-01 VIOLATES THE COMMERCE CLAUSE

45. Union Pacific realleges and incorporates the paragraphs above.

46. Union Pacific's operations through the City of Alpine consist of mainly interstate activities, including the shipment of goods and raw materials from other states to Texas, from

Texas to other states, and between Texas and Mexico at interchange points such as El Paso, Texas and Eagle Pass, Texas.

47. To ensure compliance with Ordinance 2020-02-01, Union Pacific would have to substantially modify its operating procedures, including train speed, train length, and procedures when stopping at grade crossings, at Union Pacific's expense and at the expense of the businesses it serves. Ordinance 2020-02-01 therefore imposes a substantial burden on the flow of interstate commerce.

48. The burden imposed by the City of Alpine's anti-blocking statute on interstate commerce is excessive in relation to any local benefit it confers, and therefore violates the Commerce Clause.

49. The Court should enter a judgment under 28 U.S.C. § 2201 declaring that Ordinance 2020-02-01 violates the Commerce Clause.

## REQUEST FOR RELIEF

Union Pacific respectfully requests the following relief:

a. On Count I, a judgment against all Defendants declaring that City of Alpine Ordinance 2020-02-01 is preempted by the ICC Termination Act, 49 U.S.C. § 10501(b), and is therefore void and unenforceable;

b. On Count II, a judgment against all Defendants declaring that City of Alpine Ordinance 2020-02-01 is preempted by the Federal Railroad Safety Act, 49 U.S.C. § 20106, and is therefore void and unenforceable;

c. On Count III, a judgment against all Defendants declaring that City of Alpine Ordinance 2020-02-01 violates the Commerce Clause and is therefore void and unenforceable;

d. Permanent injunctive relief restraining Defendants and their employees or agents from prospectively enforcing City of Alpine Ordinance 2020-02-01 against Union Pacific and its employees;

e. An award of attorney's fees, as permitted by law;

f. Its other costs expended in this matter; and

g. Any other relief to which it may be entitled.

Date: September 24, 2020  Respectfully submitted,

*/s/ Kent Rutter*
Kent Rutter
Texas Bar No. 00797364
Christina Crozier
Texas Bar No. 24050466
HAYNES AND BOONE, LLP
1221 McKinney, Suite 4000
Houston, Texas 77010-2007
Telephone: (713) 547-2000

COUNSEL TO PLAINTIFF,
UNION PACIFIC RAILROAD COMPANY